NOT DESIGNATED FOR PUBLICATION

No. 123,019

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY R. FOSTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed December 23, 2021. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Jacob M. Gontesky*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: Jeffrey R. Foster appeals the trial court's decision to revoke his postimprisonment supervision and order him to serve the underlying sentence. He argues that the trial court erred in imposing his sentence and in calculating his jail credit. Because the trial court did not abuse its discretion and because Foster raises the issue of jail credit for the first time on appeal, we affirm.

FACTS

In April 2019, Foster pleaded guilty to driving under the influence (DUI), fourth offense, in violation of K.S.A. 2018 Supp. 8-1567(b)(1)(E), and abusing toxic vapors, in violation of K.S.A. 2018 Supp. 21-5712. At the same hearing, Foster also pleaded guilty in a separate case to additional charges, including another DUI. Foster entered his pleas together as part of a universal plea agreement. Following the plea agreement, the trial court sentenced Foster to 48 hours in jail and 3,000 hours of house arrest, followed by a 12-month period of postimprisonment supervision. The underlying sentence was 18 months in jail. The trial court gave Foster 51 days of jail credit for the time he spent in custody before sentencing.

As one of the conditions of postimprisonment supervision, the trial court directed Foster not to drive. The trial court also did not authorize supervision officers to impose internal sanctions. This condition meant that any violation would result in Foster returning to court for a revocation hearing.

While Foster was on house arrest, he moved to modify the terms of his sentence. Foster's sentence required that he live under house arrest at an Oxford House sober living environment. But he was also litigating a child in need of care (CINC) case involving his two children in hopes of reintegration. One factor hindering reintegration with his children was the fact that Foster lived in an Oxford House rather than a home of his own. Thus, Foster sought to modify the condition of his house arrest sentence requiring him to stay at Oxford House.

At a hearing on his motion, Foster testified that he sought to conform to both the conditions of his house arrest and the requirements of his CINC case. He testified that he opened a new Oxford House for men and children, using a loan from Friends of Recovery. He served as president and treasurer of the new Oxford House in Olathe,

which was named after his elder child. Foster also testified about his history of substance abuse, explaining that he was sober for nearly four years before his relapse in 2018 when his fiancée passed away and his children were in state custody. This relapse led him to, in his words, "put the public at risk getting these DUIs." In support of modifying the conditions of his house arrest, Foster pointed to his continued sobriety, leadership roles, and community support.

The State opposed modifying the conditions of Foster's house arrest. The State argued that an ignition interlock device would not be useful here because Foster's DUI history involved huffing toxic vapors. And the State explained that its motivation in the plea agreement was the hope that treatment would reduce the risk to public safety by addressing the underlying cause of Foster's DUIs. The State acknowledged that Foster had done well and made good progress. But the State argued that Foster needed to remain in a sober environment because he needed treatment and because the plea agreement required it.

The trial court denied Foster's motion to modify the conditions of his house arrest for two reasons. First, a trial court generally loses jurisdiction to modify a sentence once it is imposed. The trial court was doubtful that it could modify the location where Foster would serve his house arrest. Second, the trial court agreed with the State that Foster should remain at Oxford House during his house arrest.

Less than two weeks after the motion to modify hearing, the State moved to revoke Foster's postimprisonment supervision. The State alleged that Foster violated several conditions of his postimprisonment supervision, including driving a car and having contact with another person on supervision.

At a February 2020 hearing on the State's motion to revoke, Foster admitted to violating his supervision conditions by driving in the probation office parking lot. The

State requested Foster serve his underlying sentence. The State recognized that Foster's act of driving "wouldn't be as big of a deal" if it happened in a different case. But the State again pointed to the fact that Foster's DUI convictions involved huffing and the State could not monitor his sobriety with an ignition interlock device. The State also noted that most of Foster's DUI cases involved wrecks. Foster's probation officer agreed with the State's recommendation, stating that her greatest concern was that Foster lied when she confronted him about driving.

Foster highlighted his success during his period of house arrest, his continued sobriety, his employment, and his progress paying fines and fees to get his driver's license reinstated. He also talked again about the Oxford House which he started to allow men to be with their children, explaining that this Oxford House was named after the older of his two children. Foster's counsel argued that Foster had perfectly complied on house arrest and this violation on postimprisonment supervision was his first issue. Thus, Foster requested to serve his supervision term in a residential center rather than serve his underlying sentence.

The trial court recounted Foster's driving-related prior convictions before it revoked his supervision and ordered that he serve the underlying sentence.

Foster timely appeals.

ANALYSIS

*Is the case moot?*

The State argues that this court should dismiss Foster's claims as moot because he has served his sentence. Foster argues that the State has failed to meet its burden to establish a prima facie showing of mootness. Because the State has produced no reliable

evidence that Foster's claims are moot, as discussed later in this opinion, our only remaining choice is to reach the merits of Foster's claims.

In general, Kansas appellate courts do not decide moot questions or render advisory opinions. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). The mootness doctrine is one of court policy, under which the court is to determine real controversies about the legal rights of persons and properties that are actually involved in the case properly before it and to adjudicate those rights in a way that is operative, final, and conclusive. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020); see also *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012); *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996).

"The party asserting mootness generally bears the initial burden of establishing that a case is moot in the first instance. [Citation omitted.]" *Roat*, 311 Kan. at 593.

A bright line test, such as a rule that a sentencing appeal is moot if the sentence is completed, is contrary to Kansas law. 311 Kan. at 592. An issue on appeal will only be dismissed as moot if it can be shown clearly and convincingly that the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and the judgment would not impact any of the parties' rights. *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014). A case is not moot if "it may have adverse legal consequences in the future." *Montgomery*, 295 Kan. 837, Syl. ¶ 4.

Appellate courts commonly apply an exception when an issue "'is capable of repetition and raises concerns of public importance.'" *State v. Kinder*, 307 Kan. 237, 244, 408 P.3d 114 (2018). "Public importance means more than that certain members of the general public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future

conduct. [Citation omitted.]" *State v. Hayden*, 52 Kan. App. 2d 202, 206, 364 P.3d 962 (2015).

In an appeal solely challenging a sentence, the party asserting mootness may establish a prima facie showing of mootness by demonstrating that the defendant has fully completed the terms and conditions of the defendant's sentence. The burden then shifts to the defendant to show that dismissal would impair a substantial interest or that an exception to the mootness doctrine applies. *Roat*, 311 Kan. at 593.

The State asserts that Foster completed his underlying 18-month jail sentence in June 2021 and therefore this case is moot. To support its claim, the State presents the Johnson County District Court's record of actions for Foster's case, which includes the entry "Probation Terminated" on "06/10/2021." Foster argues that the State has failed to make a prima facie showing of mootness. Our Supreme Court discussed the standard for sufficiently reliable evidence to show mootness in *State v. Yazell*, 311 Kan. 625, 465 P.3d 1147 (2020) (*Yazell I*).

In *Yazell I*, the State claimed that Corey Leroy Yazell's appeal was moot because he was released from custody, relying on the Kansas Adult Supervised Population Electronic Repository (KASPER), a website maintained by the Kansas Department of Corrections (KDOC). The State also spoke with a KDOC employee over the phone to confirm the information on KASPER. Our Supreme Court held that information provided by KASPER was not sufficiently reliable evidence to establish mootness and the State's hearsay evidence did not fix this defect. The *Yazell I* court noted the disclaimer on the KASPER website stating that it made no claim to authenticity or reliability. Thus, the *Yazell I* court held that this court had erred in dismissing Yazell's case as moot. 311 Kan. at 631.

On remand to this court, the State submitted a notice of change of custodial status, attaching a "'Certification of Time Served.'" *State v. Yazell*, No. 116,761, 2021 WL 402078, at *3 (Kan. App. 2021) (unpublished opinion) (*Yazell II*), *rev. denied* 314 Kan. __ (September 30, 2021). The signed sworn certification from the KDOC records custodian declared and certified that the record of Yazell's release contained true and correct information. This court held that the State provided sufficient evidence to make its prima facie case, citing *State v. Castle*, 59 Kan. App. 2d 39, 46-47, 477 P.3d 266 (2020). This court ruled that Yazell's case was moot and that no exceptions to mootness applied. *Yazell II*, 2021 WL 402078, at *4-5.

Foster argues that the State's use of the Johnson County District Court's Record of Action fails to meet the State's burden as established in *Yazell I*. Foster asserts that the disclaimer on the Johnson County District Court's website resembles the KASPER disclaimer discussed by the *Yazell I* court. The *Yazell I* court quoted the KASPER website as follows:

> "'The information contained on this website is subject to disclosure pursuant to the Kansas Open Records Act (K.S.A. 45-221). While the information is believed to be accurate, the State of Kansas, the Kansas Department of Corrections, their employees or officers, make no warranties, express or implied, including warranties of merchantability and fitness for a particular purpose. Further the Kansas Department of Corrections assumes no legal liability or responsibility for the accuracy, completeness, or usefulness of any information, product, or process disclosed, nor represents that its use would not infringe on privately owned rights.' https://kdocrepository.doc.ks.gov/kasper/search/disclaimer." 311 Kan. at 631.

While KASPER's disclaimer states that "the information is believed to be accurate," the Johnson County District Court's disclaimer advises that the information is provided "as is" with no affirmations of accuracy:

7

"**Disclaimer:** The Johnson County District Court declares that the information provided on and obtained from this site does not constitute the official record of the Court. The information contained in this web-site is provided as a service to the Internet-Community. Any user of this information is hereby advised that it is being provided as is. The information provided may be subject to errors or omissions. Visitors to this site agree that the Johnson County District Court is not liable for errors or omissions of any of the information provided. Furthermore, this site provides links to sites administered by other organizations for which the Johnson County District Court cannot warrant the accuracy. The information provided on this site should not be used as a substitute for advice of legal counsel." Disclaimer, jococourts.org/disclaimer.aspx.

The State claims that Foster's sentence completion is established by the entry in the Johnson County District Court's record of actions stating, "Probation Terminated." But our Supreme Court in *Yazell I* determined that a printout from KASPER was insufficient. And KASPER includes information to help identify the correct prisoner including name, aliases, birthdate, height, and weight. KASPER also will display a current status, such as "Incarcerated" or "Local Detention," and shows when the information was last updated. But the State here relies on a system with less information. The record of actions only shows "Probation Terminated" on June 10, 2021, and is not explicit about whether this means Foster was released from custody. In sum, our Supreme Court directed the appellate prosecutor in *Yazell I* to provide the appellate courts with more, but the appellate prosecutor here provides this court with less.

Thus, the Johnson County District Court website provides less information than KASPER. But also, reliability of information is at issue. The *Yazell I* court rejected the use of KASPER to verify that a prisoner has been released from custody, stating that it is unreliable evidence. 311 Kan. 625, Syl. ¶ 1. Comparing the disclaimers suggest that the documentation that the State presents here is less reliable. Because the *Yazell I* court rejected KASPER as unreliable evidence, it chose not to address the catastrophic results that come with dismissing an appeal based on unreliable evidence.

The danger is that an appellate court could dismiss cases as moot under the mistaken belief that appellants have served their sentences. Nevertheless, the appellants are still in custody. Then, appellants have no recourse but to remain in custody until their appeal is refiled.

Foster's arguments on mootness do not resolve the issue because no exceptions to mootness apply here. Foster asserts that his argument for counting house arrest as jail credit is capable of repetition while evading review and it presents a question of public importance. But, in other contexts, Kansas appellate courts have determined that time spent on house arrest does not count toward jail credit. Thus, the issue has not evaded review and it is not an issue of public importance. Because no exceptions apply, this case is moot, and we should dismiss if Foster has completed his sentence. If Foster has not completed his sentence, then we need to address Foster's claims.

So the State's lack of reliable evidence for its prima facie case places us in a difficult position. As a factual matter, only two possibilities exist: either Foster has completed his sentence, or he has not. Error is possible in either case. If he has completed his sentence, then our adjudication of his claims acts as an advisory opinion because there is no longer a real controversy about Foster's legal rights. See *Roat*, 311 Kan. at 590. Kansas courts lack the constitutional authority to issue advisory opinions. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 166, 473 P.3d 869 (2020). If Foster has not completed his sentence, then we are required to adjudicate the case on its merits. In this case, the error would be to dismiss Foster's appeal as moot when it is not.

But *Yazell I* allows us to err on the side of adjudicating the merits. The *Yazell I* court remanded for further proceedings, increasing the appellate prosecutor's burden to produce more reliable evidence. As discussed here, the *Yazell I* court was correct to increase this burden. Records may be inaccurate in describing when a prisoner has completed their sentence, as well as on the separate question of whether the prisoner has

been released. Kansas appellate courts require accurate and reliable evidence to show that a case is moot. The appellate prosecutor in *Yazell II* had to produce additional evidence on remand, and such evidence is required here. Because the State produced no reliable evidence that Foster's claims are moot, our only remaining choice is to reach the merits of Foster's claims even if this requires us to issue an advisory opinion.

*Did the trial court abuse its discretion in ordering Foster to serve his underlying sentence?*

Foster argues that the trial court abused its discretion when it revoked his supervision because no reasonable person would order him to serve his underlying sentence. The State argues that Foster's criminal history of 23 convictions, almost all driving-related, means that a reasonable person could revoke his supervision when he violated the no-driving condition of his supervision.

An appellate court reviews the trial court's revocation of an offender's probation for an abuse of discretion. *State v. Coleman*, 311 Kan. 332, 334, 460 P.3d 828 (2020). Felony DUI postimprisonment supervision is akin to probation and appellate courts review revocation for an abuse of discretion. *State v. Castillo*, 54 Kan. App. 2d 217, 227, 397 P.3d 1248 (2017). "A judicial action constitutes an abuse of discretion if: (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. [Citation omitted.]" *State v. Willis*, 312 Kan. 127, 133, 475 P.3d 324 (2020).

Foster does not maintain that the trial court erred on either the facts or the law. Instead, Foster asserts that several factors undermined the reasonableness of the trial court's decision to the extent that no reasonable person would have revoked his supervision. Foster notes that a jail sentence was not the only remedy available to the court. Foster contends that the trial court had the better option of placing him in the more

restrictive environment of a residential community as an intermediate step between his supervision and jail time. Foster maintains that a residential community would have better served his continued sobriety and success in the community and thus no reasonable person would have ordered a jail sentence in light of the other factors. And the other factors that Foster cites are the nature of the violation and his success in rehabilitation.

First, Foster argues that the violation was minor and understandable. He asserts that his girlfriend was on medication from oral surgery she had the previous day and so he drove her to her probation appointment, which coincided with his own. He furthers claims that he made an understandable mistake because he believed that he had permission. Foster contends that, while he was on house arrest, he asked if he could go with his girlfriend to a medical appointment and his house arrest officer permitted it. Foster claims that when he switched from house arrest to postimprisonment supervision, he assumed that he could drive his girlfriend to appointments. The State, however, clarified that the house arrest officer gave permission for Foster to attend his girlfriend's medical appointment but said nothing about driving her.

Second, Foster highlights his successes on house arrest. He had maintained sobriety for over 20 months. He completed house arrest at Oxford House without incident. His work at Oxford House established a new location for men with children. He integrated with and led a support group. And he maintained employment, making payments toward his costs and fines.

But the trial court acknowledged Foster's long history of driving-related crimes. The trial court elaborated that it adopted the recommendations of the plea agreement specifically because the condition of not driving was an integral part of the agreement. The bottom line is that the trial court explained that Foster violated what it considered the most important condition of his supervision. And in the State's motion to revoke, it alleged that Foster had committed the new crime of driving while suspended. Early in the

revocation proceedings, Foster stipulated to driving and later he asserted that he was working to reinstate his license. Given Foster's history of driving violations, the trial court reasonably revoked his supervision when he violated his conditions of supervision by driving without a valid license.

*Did the trial court err by omitting Foster's house arrest time from his jail credit calculations?*

For the first time on appeal, Foster argues that the trial court erred in awarding jail credit and asks this court to remand with instructions to include the 125 days that he served on house arrest as jail credit. The State argues that time spent on house arrest does not count toward jail credit.

Generally, issues not raised before the trial court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) that the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) that consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) that the trial court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019). Nevertheless, even if an exception is invoked "[t]he decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, we have no obligation to do so. [Citations omitted.]" *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

Foster concedes in his brief that he did not raise this issue of jail credit before the trial court. But he contends that we may reach the issue for the first time on appeal because the question of whether he can receive jail credit for house arrest is "purely a

12

question of law that is determinative of the issue." We disagree that this exception to the general rule applies.

We know that while sentencing is pending, time spent on house arrest does not accrue as jail credit. *State v. Guzman*, 279 Kan. 812, 815-16, 112 P.3d 120 (2005). We also know that during probation, time spent on house arrest does not accrue as jail credit. See *State v. Cordill*, 24 Kan. App. 2d 780, 781, 955 P.2d 633 (1997); *State v. Williams*, 18 Kan. App. 2d 424, 430-31, 856 P.2d 158 (1993). But Foster argues that house arrest as part of confinement in felony DUI cases differs from house arrest pending sentencing or house arrest during probation. Even if we assume, without deciding, that he is correct, it is impossible for us to determine if Foster was improperly denied jail time credit for his time on house arrest given the record before us.

This appeal is related only to Foster's conviction for a fourth DUI offense. A person convicted of a fourth or subsequent DUI "shall be sentenced to not less than 90 days nor more than one year's imprisonment and fined $2,500." K.S.A. 2018 Supp. 8-1567(b)(1)(E). The court may place an offender on a house arrest program only after the offender "has served 72 consecutive hours' imprisonment." K.S.A. 2018 Supp. 8-1567(b)(1)(E). The time on house arrest must be a minimum of 2,160 hours, but if the court makes any exceptions to remaining within the offender's residence, those hours are not counted as part of the required 2,160 hours. Moreover, a person "shall not" be able to begin probation or have a reduced sentence until they have served "at least 90 days' imprisonment." K.S.A. 2018 Supp. 8-1567(b)(1)(E).

Here, according to the sentencing journal entry, Foster was sentenced to 12 months' incarceration, to be released to 12 months of postimprisonment supervision after serving 48 hours in jail *or* 3,000 hours of house arrest. We pause to note that the 48-hour minimum is the sentence statutorily required for a third time DUI offender, not a fourth time offender. K.S.A. 2018 Supp. 8-1567(b)(1)(D). He was also given a consecutive

sentence of six months on the toxic vapors charge for a total underlying sentence of 180 days. Although the sentencing journal entry noted that Foster potentially had 51 days of jail credit, it also noted that those days were *not* awarded. Nevertheless, at the sentencing hearing, the trial judge noted—contrary to the journal entry—that Foster had been given 51 days' credit. The judge then noted that "[u]pon my reading of the plea agreement, I'm assuming shock time as well as the house arrest has all been satisfied, he's to continue now with the 3,000 hours of house arrest concurrently." The Order of Post Imprisonment Supervision noted that it would begin after any release from custody or house arrest and contained, as a condition, that he serve 3,000 hours of house arrest. Yet, the trial judge noted at sentencing that Foster was "to begin 3,000 hours of house arrest from today. That's a condition, and then the post-imprisonment supervision is to follow the time when the house arrest is completed."

When Foster's postimprisonment supervision was later revoked, the journal entry awarded him 184 days of jail credit, which did not include any of the 51 days that was previously noted by the trial judge at the sentencing hearing but denied in the journal entry of sentencing. To add to the confusion, Foster's attorney told the court that Foster had only served 51 days, with the balance of 18 months remaining.

Without clarification and fact-finding by the trial judge, it is impossible for us to determine whether any or all the 3,000 hours of house arrest ordered in this case—for which Foster seeks jail credit—was part of Foster's mandatory DUI sentence or a condition of post incarceration supervision or whether it was included in the 184 days of jail credit Foster was granted.

As our Supreme Court recently warned, "[a]n appellate court abuses its discretion when invoking an exception to the general rule against addressing an issue for the first time on appeal if consideration of the unpreserved issue would require the court to make

14

factual findings." *State v. Allen*, 314 Kan. ___, Syl. ¶ 5, 497 P.3d 566 (2021). Such is the case here.

Because Foster raises the issue of jail credit for the first time on appeal and because the consideration of Foster's jail credit argument requires fact-finding that we must not engage in on appeal, we decline to review this issue. But see, *State v. Smith*, 309 Kan. 977, Syl. ¶ 1, 441 P.3d 1041 (2019) ("A criminal defendant's failure to raise the issue of jail credit on direct appeal does not foreclose a motion under K.S.A. 22-3504[2].")

For the preceding reasons, we affirm.

Affirmed.